UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
UNITED STATES OF AMERICA,

                                        17 Cr. 611 (RWS)
                                        OPINION

        -against-

MICHAEL WHITE,

                    Defendant.
------------------------------------X

A P P E A R A N C E S:


            Attorneys for the United States

            GEOFFREY S. BERMAN
            United States Attorney for the
            Southern District of New York
            One St. Andrew's Plaza
            New York, NY 10007
            By:  Jordan Estes, Esq.
                 Gina Castellano, Esq.
                 Alexandra Rothman, Esq.


            Attorneys for Michael White

            DECHERT LLP
            1095 Avenue of the Americas
            New York, NY 10036
            By:  Michael J. Gilbert, Esq.
                 Deborah Olufolakemi Martin, Esq.
                 Paul Curran Kingsbery, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/18

**Sweet, D.J.**

Defendant Michael White ("White") has moved *in limine* (1) to exclude the testimony of the Government's proposed ballistics expert, Detective Jonathan Fox, or in the alternative, to hold a *Daubert* hearing and limit certain of Detective Fox's conclusions; (2) to admit an audio recording of an interview with a rival gang member ("Individual-4") to show that White did not shoot him on January 25, 2010, if Individual-4 is unavailable to testify; (3) to exclude White's January 6, 2015 Facebook post; and (4) to exclude evidence of White's prior convictions and incarceration.

The Government has moved *in limine* (1) to admit evidence of White's firearms convictions in 2011 and 2013; (2) to admit evidence regarding White's prior periods of incarceration; and (3) to admit certain statements made by alleged co-conspirators in furtherance of the conspiracy.

## I.  **Prior Proceedings**

On October 4, 2017, a grand jury in the Southern District of New York returned a nine-count indictment ("the Original Indictment") charging White and thirteen other

1

defendants, and setting forth charges related to alleged gang activity in the Bronx. On July 16, 2018, a grand jury in the Southern District of New York returned a twelve-count Superseding Indictment charging White and nine other defendants based on the same gang activity described in the Original Indictment ("the Superseding Indictment").

The Superseding Indictment charges that White is a member of two violent street gangs, the "Young Gunnaz," or "YGz," and "MBG," which stands for "Millbrook Gangstas" or "Money Bitches Guns"; that rivalries between these gangs and others have resulted in attempted murders, shootings, assaults, and other violent acts; and that MBG and YGz members committed violent acts to preserve the reputation of the gangs, to protect fellow gang members, and to further their disputes with rivals. The Superseding Indictment also charges White specifically with two counts of conspiring to violate the Racketeering and Corrupt Organizations Act (Counts One and Two); one count of committing a violent crime in aid of racketeering (Count Four); and one count of possessing a firearm in connection with a crime of violence (Count Eleven).

The present motions *in limine* were filed by Defendant on September 6 and 10, 2018, and by the Government on September

10, 2018. All motions *in limine* were heard and marked fully submitted on September 19, 2018.

Initially scheduled for September 24, 2018, trial is adjourned until October 2, 2018 for reasons set out below.

## II.  The Testimony of Detective Fox

On August 16, 2018, the Government notified White pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) that it plans to call Detective Jonathan Fox, a member of the Firearms Analysis Section of the New York City Police Department ("NYPD"), to testify as an expert witness regarding (i) his training, qualifications, and experience in the field of firearms and ballistics examination; (ii) the foundations of the field of firearms and ballistics examination, including the operation of firearms, the effects of the manufacturing process on firearms and ballistics evidence, toolmark identification, and the use of the comparison microscope; and (iii) his opinions, based on his training and experience, about the ballistics matches between various bullets, shell casings, and firearms recovered in this case. *See* Gov't Mem. in Opp'n, Sept. 17, 2018, ECF No. 276, at 6-7.

White has moved to exclude the testimony of Detective Fox, or in the alternative, to limit Detective Fox's testimony on the grounds that it fails to meet the standards of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow*, 509 U.S. 579 (1993). *See* Def. Mem. in Supp., Sept. 7, 2018, ECF No. 255, at 6. Additionally, White has requested a separate hearing both to enable the Court to assess properly the admissibility of Detective Fox's testimony and to allow White the chance to obtain further information regarding the processes that Detective Fox used during his analysis. *See id.*

Pursuant to Rule 702, the district court must ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. In determining reliability, the district court should consider the indicia identified in Rule 702, as well as the factors enumerated in *Daubert*. *See United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). However, *Daubert*'s list of specific factors "'neither necessarily nor exclusively applies to all experts or in every case.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). Furthermore, a separate hearing is not automatically required in order for the court to fulfill its gatekeeping function under *Daubert*. *See, e.g.*, *id.*, at 161; *United States v. Smalls*, 719 F. App'x 83, 85 (2d Cir.

2018); *United States v. Barnes*, No. 04-CR-186, 2008 WL 9359653 (S.D.N.Y. Apr. 2, 2008); *United States v. Ashburn*, 88 F. Supp. 3d 239, 244-45(E.D.N.Y. 2015). Instead, the court has "considerable leeway" in deciding both "*how* to test an expert's reliability" and "*whether or not* that expert's relevant testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

## A. A *Daubert* Hearing Is Unnecessary

Based on the evidence in the record and the findings made in other federal cases on this issue, the Court has ample information regarding Detective Fox's proffered testimony and the methodology he employed to assess the reliability of his testimony without a separate hearing. In addition, the Government has provided White with adequate information regarding the processes that Detective Fox used during his analysis.

As a result, White's request for a pre-trial *Daubert* hearing is denied. *See United States v. Gil*, 680 F. App'x 11, 13-14 (2d Cir. 2017) (affirming Judge Koeltl's decision to admit expert ballistics testimony without first holding *Daubert* hearing).

## B. Detective Fox's Testimony Is Admissible, Subject to Certain Limitations

The general admissibility of expert testimony
regarding ballistics analysis has been repeatedly recognized by
federal courts. *See, e.g.*, *United States v. Glynn*, 578 F. Supp.
2d 567, 569 (S.D.N.Y. 2008); *Ashburn*, 88 F. Supp. 3d at 247.
Moreover, the Second Circuit has recently affirmed the admission
of this kind of expert ballistics testimony. *See Gil*, 680 F.
App'x at 14. As such, White's motion to exclude Detective Fox's
testimony in its entirety is denied.

Still, certain restrictions to Detective Fox's
testimony are warranted. Recent reports have challenged
ballistics analysis as a science. For example, the National
Research Council has noted the subjectivity of the analysis and
the lack of any definitive error rate. *See, e.g.*, NAT'L RES.
COUNCIL, STRENGTHENING FORENSIC SCIENCE IN THE UNITED STATES: A PATH FORWARD
154-55 (2009); NAT'L RES. COUNCIL, BALLISTIC IMAGING: COMMITTEE TO ASSESS
THE FEASIBILITY, ACCURACY, AND TECHNICAL CAPABILITY OF A NATIONAL BALLISTICS
DATABASE 3 (2008). The Government's detailed description of
Detective Fox's anticipated testimony is insufficient to
persuade the Court that the concerns raised by such reports are
unjustified. Specifically, the evidence fails to establish that

the theory of uniqueness on which Detective Fox relies has been
proven as a matter of empirical science, that there is any
objective standard for declaring a "match," or that there is any
reliable basis on which Detective Fox could state the degree to
which he is certain of his conclusions.

For these reasons, consistent with other federal
opinions, the Court finds that Detective Fox's testimony must be
limited in certain respects. *See, e.g.*, *Glynn*, F. Supp. 2d at
575 (restricting ballistics expert's opinion to statement that
match was "more likely than not"); Order, *United States v.
Barrett*, No. 12-cr-45, at 1 (S.D.N.Y. Mar. 11, 2013); *Ashburn*,
88 F. Supp. 3d at 249 (precluding expert from testifying that he
is "certain" or "100%" sure of his matches); *United States v.
Willock*, 696 F. Supp. 2d 536, 574 (D. Md. 2010) (prohibiting
expert from stating that it was a "practical impossibility" that
any other firearm fired the cartridges in question); *United
States v. Green*, 405 F. Supp. 2d 104, 124 (D. Mass. 2005)
(precluding expert from testifying that his methodology permits
"the exclusion of all other guns" as source of certain shell
casings). In particular, Detective Fox may not testify to any
specific degree of certainty as to his conclusion that there is
a ballistics match between the firearms seized from White and
those used in the various shooting incidents. However, if

7

pressed to define his degree of certainty during cross-examination, Detective Fox may state his personal belief on that issue.

Accordingly, Defendant's motion to exclude Detective Fox's testimony in its entirety is denied, but the motion to limit the testimony is granted.

Lastly, in a letter dated September 18, 2018, White stated that he received from the Government additional expert reports after filing his motion to exclude Detective Fox's testimony. White seeks to exclude these new reports on reliability grounds. *See* Def. Ltr., Sept. 18, 2018, ECF No. 283. That motion is denied. Applying the same considerations as above, there is a sufficient basis on which to admit this evidence. However, trial will be adjourned until October 2, 2018 in order to provide White with adequate time to review and prepare his defense against the new evidence.

## III. **The Individual-4 Statement**

White has moved the Court to rule that, pursuant to Federal Rule of Evidence 804(b)(3), a recorded interview between the victim of a January 25, 2010 shooting ("Individual-4") and

8

law enforcement may be admitted in the case of Individual-4's
unavailability during trial.

Generally, an out-of-court statement offered to prove
the truth of the matter asserted is inadmissible as hearsay. *See*
Fed. R. Evid. 801, 802. However, if a declarant is unavailable
to testify, his or her statement against penal interest is
admissible as an exception to that rule. *See* Fed. R. Evid.
804(b)(3). To invoke this exception, the proponent of the
statement "must show (1) that the declarant is unavailable as a
witness, (2) that the statement is sufficiently reliable to
warrant an inference that a reasonable man in [the declarant's]
position would not have made the statement unless he believed it
to be true, and (3) that corroborating circumstances clearly
indicate the trustworthiness of the statement." *United States v.*
*Wexler*, 522 F.3d 194, 202 (2d Cir. 2008) (internal quotation
marks omitted).

This exception to the rule against hearsay is premised
on the belief that "reasonable people . . . tend not to make
self-inculpatory statements unless they believe them to be
true." *Williamson v. United States*, 512 U.S. 594, 599 (1994). As
such, "[t]he key to [the Rule 804(b)(3)] inquiry is whether the
statement is sufficiently 'self-inculpatory,' which the district

court must evaluate on a 'case-by-case basis.'" *United States v. Ulbricht*, 858 F.3d 71, 122 (2d Cir. 2017) (citing *Williams*, 506 F.3d at 155). "Further, the inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable." *United States v. Gupta*, 93 F.3d 111, 127 (2d Cir. 2014) (internal citation omitted).

Based on the record, the Court concludes that Individual-4's statement is not one against interest and, in any event, the corroborating circumstances are insufficient to clearly support its trustworthiness.

As described by the parties, the relevant facts are generally as follows. On January 25, 2010, Individual-4, an alleged member of rival gang Killbrook, was shot. On two occasions in January 2010, including on the day of the shooting, Individual-4 told law enforcement that he could not identify the shooter because he was masked. Yet, on the day of the shooting, Individual-4 was overheard telling his brother that "Mike" was his assailant. In addition, on January 31, 2010, CW-2 heard Individual-4 tell White that he "held it down," suggesting he did not tell police that White shot him. Then, during a New York grand jury proceeding nearly a month after that, Individual-4 identified White as his shooter and testified that he previously

failed to identify White because he "didn't want to be bothered." But when approached by White's investigator earlier this year, Individual-4 reverted back to his original story and claimed that his grand jury testimony was false. Finally, on August 13, 2018, an NYPD detective interviewed Individual-4 at his home. During that interview, Individual-4 stated that he does not believe White shot him on January 25, 2010, that his prior testimony in the state grand jury proceeding identifying White as the shooter had no factual basis, and that his assailant had been wearing a mask.

The recording of that interview is the subject of White's motion. Specifically, White argues that this statement is against Individual-4's penal interest because it is a direct admission to law enforcement that he committed perjury. *See* Def's Mot. in Supp., Sept. 10, 2018, ECF No. 261, at 4. However, the Court concludes that the August 13, 2018 statement is not sufficiently against Individual-4's penal interest. A reasonable person in Individual-4's shoes would not believe that he faced a risk of criminal punishment for a perjury that occurred more than eight years previously, when he was just sixteen years old. Indeed, the statute of limitations for perjury is five years in New York, so the statement could not have been against

11

Individual-4's penal interest at all. *See* N.Y. Crim. Pro. L. §
30.10(2)(b).

The Court also concludes that White has not met his
burden of corroborating "both the *declarant's* trustworthiness as
well as the *statement's* trustworthiness." *United States v.
Bahadar*, 954 F.2d 821, 829 (2d Cir. 1992).

First, as detailed above, Individual-4 has not been
consistent in his account of the shooting. *Cf. United States v.
Doyle*, 130 F.3d 523, 544 (2d Cir. 1997) (affirming district
court's exclusion of declarant's statements, which were
inconsistent with previous accounts); *Bahadar*, 954 F.2d 821, 829
(finding "repeated changes" in declarant's story would "properly
make any district judge suspicious of the statement's
reliability").

Second, Individual-4 may have made this statement not
because it was true, but rather because he wanted to avoid
testifying against the leader of a violent gang—an action that
could put his own safety and reputation among other gang members
at risk. *See United States v. Salvador*, 820 F.2d 558, 562 (2d
Cir. 1987) (affirming district court's exclusion of statement
where declarant had a motive to lie for defendant). This is

12

especially likely here, where the statement was made to law enforcement mere weeks before trial, and after first being approached by White's investigator to discuss the issue.

Third, the extrinsic evidence corroborating this statement is weak. White contends that a third-party witness to the shooting told police that the shooter was wearing a mask. *See* Def. Mot. in Supp., Sept. 10, 2018, ECF No. 261, at 5-6. However, the Government has stated that the witness, whose native language is not English, in fact told the police that the shooter had "panty hose" on, but not covering, his head. *See* Gov't Mot. in Opp'n, Sept. 17, 2018, ECF No. 276, at 28. The Government also noted that a second eyewitness told police that the shooter was a black male with a black jacket, who was wearing a dark skullcap on his head. *See* Gov't Mot. in Opp'n, Sept. 17, 2018, ECF No. 276, at 19. The only other extrinsic corroboration offered by White is a 911 call in which Individual-4's sister identifies someone other than White as his shooter. *See* Def. Mot. in Supp., Sept. 10, 2018, ECF No. 261, at 5. That person was apparently investigated by law enforcement and found not to be a suspect. *See* Oral Arg. Tr. 15, Sept. 19, 2018. At the same time, the Government has provided extrinsic evidence that undercuts Individual-4's recent statements. For instance, Individual-4 told the NYPD detective on August 13,

2018 that he had never seen White or had any conflict with him,
but in 2016 an individual named Andre Cofield sent a message to
White alerting him that Individual-4 was in their neighborhood
with a gun. *See* Gov't Mot. in Opp'n, Sept. 17, 2018, ECF No.
276, at 20.

In light of the above, White's motion to admit
Individual-4's August 13, 2018 statement under Rule 804(b)(3) is
denied.

## IV. **White's January 6, 2015 Facebook Post**

White has moved to exclude a January 6, 2015 Facebook
post, in which White commented on the shooting of two police
officers in the Bronx. Because the Government has stated that it
will not introduce this evidence at trial, this motion is moot.

## V. **Evidence of White's 2011 and 2013 Guilty Pleas**

Pursuant to Rules 403 and 404(b) of the Federal Rules
of Evidence, White has moved to exclude (1) his 2011 plea of
guilty to attempted possession of a weapon in the third degree
before the Supreme Court of New York, Bronx County; and (2) his
2013 plea of guilty to being a felon in possession of a firearm

14

before the U.S. District Court for the Southern District of New York. The Government has moved to admit these guilty pleas under Rule 801(d)(2)(A) of the Federal Rules of Evidence.

As an initial matter, the statements contained in the guilty pleas are White's own, and the Government is offering them against him. Thus, the requirements of Rule 801(d)(2)(A) are satisfied.

Further, the statements contained in the pleas are not offered to prove White's criminal propensity such that they should be excluded under Rule 404(b). Detective Fox is expected to testify that there is a ballistics match between the firearms to which White admitted to possessing in his guilty pleas and the shell casings recovered from two gang-related shootings. The guilty pleas are thus direct evidence of White's involvement in the racketeering acts that are central to the present case, rather than improper evidence of his general character.[1]

Finally, the probative value of these admissions is not substantially outweighed by any risk of unfair prejudice or

---

[1]    Indeed, the Government indicated during oral arguments on September 19, 2018 that it would be willing to "sanitize" the 2013 guilty plea to remove any reference to White being a "felon." *See* Oral Arg. Tr. 17, Sept. 19, 2018.

15

misleading the jury. *See* Fed. R. Evid. 403. First, in light of the anticipated expert testimony, White's admissions to attempted possession and possession of certain firearms in his pleas are highly probative of his involvement in the racketeering acts charged. Second, there is no unfair prejudice from admitting the guilty pleas. White's guilty pleas do not involve conduct more serious than the charged crime, and any additional concern about inflaming the jury may be addressed through proper limiting instructions. *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000). Nor would admitting White's 2011 and 2013 pleas be unfair, given that they were voluntarily and validly made. *See United States v. Frederick*, 702 F. Supp. 2d 32, 37 (E.D.N.Y. 2009) (summarizing federal cases admitting prior state court pleas where there is no allegation of any constitutional defect).

Accordingly, White's motion to exclude these pleas is denied; the Government's motion to admit these pleas is granted.

## VI. Other Evidence of White's Prior Convictions

The Government has moved to admit evidence to show that White was incarcerated from February 10, 2010 until about September 2012, and from December 8, 2012 until approximately

16

2014. White has moved for exclusion of any references to his prior periods of incarceration under Federal Rule of Evidence 403.

According to the Government, information about White's prior incarceration is offered to (1) explain White's absence from gang activities in 2011 and 2013 and (2) provide context to certain communications between cooperating witnesses and White or certain Facebook posts. But the Government is not alleging that White was the only MBG or YGz member absent from gang activities in those years, nor has it sought to explain White's absence at every gang-related activity even when he was not incarcerated. As such, the probative value of references to prior incarceration is limited. *Cf. United States v. Pena*, 978 F. Supp. 2d 254, 262-63 (S.D.N.Y. 2013) (excluding evidence of defendant's incarceration offered to explain his absence during certain criminal activities); *United States v. Ashburn*, No. 11-Cr-0303, 2015 WL 862118 at *3 (E.D.N.Y. 2015) (same). Moreover, the probative value added by providing alleged context to communications through references to White's imprisonment is minimal. On the other hand, evidence of prior incarceration clearly carries a substantial risk of unfair prejudice. *See United States v. McCallum*, 584 F.3d 471, 476-77 (2d Cir. 2009).

In light of the above, White's motion to exclude
evidence of his prior periods of incarceration is granted, and
the Government's motion to admit such evidence is denied.

## VII. **Various Co-Conspirator Statements Made in Furtherance of the Conspiracy**

The Government has moved to admit co-conspirator
statements to show that: (1) on January 31, 2010, during and
immediately after a baby shower, White shot two rival gang
members; (2) while incarcerated in 2010, CW-1 received a letter
from a fellow MBG member informing him that White committed
certain shootings; (3) a fellow MBG/YGz member told CW-1 that
White shot three people in the train station on October 28,
2012; and (4) Facebook was a tool for promoting gang activity,
providing support to the gangs and efforts to dominate rivals,
and for updating other gang members on its activities.

As agreed during the September 19, 2018 hearing, the
Court will reserve decision on this motion until a later date.

**VIII.    Conclusion**

For the foregoing reasons, the Defendant's and Government's motions *in limine* are both granted in part and denied in part.

It is so ordered.

**New York, NY**
**September** $\mathcal{Z}\mathcal{L}_{\mathcal{H}}$ **2018**

**ROBERT W. SWEET**
**U.S.D.J.**